## Maurice A. Crotty, Administrator, Defendant in Error, v. William Horn, Plaintiff in Error.

### Gen. No. 19,116.

1. MASTER AND SERVANT, § 867*—*when building contractor liable for the death of servant of another contractor.* A servant of certain building contractors was killed while working on a building by the servants of another contractor who had charge of a different kind of work on the same building. In an action against both of the contractors for wrongful death, a verdict finding the contractor guilty, whose servants negligently caused the death of the plaintiff's intestate, *held* sustained by the evidence.

2. MASTER AND SERVANT, § 851*—*when master ratifies act of servants.* Two separate contractors had contracts for work upon a certain building. One of them with his men were at work thereon on Sunday, which day the other contractor did not intend to work, but by a misunderstanding his foreman directed his men to report on that day. The men reported for work, and their foreman was there to tell them not to work. The contractor working on the building asked the foreman to do certain work in advance for his convenience, saying that he would see that they were paid therefor, and while the foreman and his men were doing the work a servant of the contractor who was working on the building was killed by their negligence. Later the absent contractor presented his bill to the other contractor for the Sunday work and was paid. *Held* that the contractor by presenting his bill and accepting payment ratified the acts done by his men and that he was liable for their acts the same as if he had directed the work.

3. MASTER AND SERVANT, § 870*—*when giving and refusing of peremptory instructions not reversible error.* In an action against three defendants for wrongful death, the giving of a peremptory instruction, at the close of all the evidence, to find two of the defendants not guilty, and the refusal of a like motion by the other defendant, *held* not reversible error, it appearing that there was no evidence in the record tending to prove the averments of the declaration as to such defendants, and the court gave an instruction that the fact that the court had directed a verdict as to such defendants is not to be taken as an indication that the other defendant was guilty.

4. MASTER AND SERVANT, § 870*—*when refusal of requested instruction proper.* In an action against a building contractor for the wrongful death of a servant of another contractor by the

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

negligence of the former's servants, refusal of instructions requested by the defendant *held* properly refused as omitting all reference to uncontradicted facts.

Error to the Superior Court of Cook county; the Hon. Hugo Pam, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed April 23, 1914.

Bulkley, Gray & More, for plaintiff in error.

George E. Gorman, for defendant in error; John M. Pollock, of counsel.

Mr. Presiding Justice Fitch delivered the opinion of the court.

By this writ of error the defendant, William Horn, seeks to have reversed a judgment rendered against him in the Superior Court for six thousand dollars, for negligently causing the death of the plaintiff's intestate, Patrick McNamara. The accident happened between one and two o'clock in the afternoon of Sunday, August 28, 1910. McNamara was working in the basement of a building which was being remodeled. He was in the employ of Carl Bushnell and John J. Mason, who had the contract for the work of reconstruction. The work of putting in place the structural steel used in making the alterations had been sublet to the defendant Horn, who furnished the labor, tools, ropes, etc., required for that purpose. Horn's foreman was a man named Timmons. When his men were quitting work on the day before the accident, Timmons, acting upon a misunderstanding as to Horn's intentions, told the men to return for work the next morning, Sunday. When Timmons reported that fact to Horn that evening, Horn told him this was a mistake and instructed him to notify the men to return on Monday instead of Sunday. Being unable to reach the men for that purpose on Saturday evening, Timmons went to the building on Sunday morning and told the men, who had re-

ported for work as directed, of his mistake. Mason and several of his men, including McNamara, were working in the building at that time, and as Horn's men were leaving, he called out to them "What's the matter, aren't you going to work?" Timmons replied, "Nothing doing this morning; Horn won't stand for any double time." Mason then said that he had brick-layers working, that one of Horn's derricks was in the way, and that if Timmons and his men would go to work and move the derrick, he (Mason) would pay them, or see that they were paid, "for double time." Timmons telephoned this request to Horn. Horn asked how long it would take to move the derrick, and Timmons replied that it would take about three or four hours. Horn then said that he didn't like Sunday work, but if Mason would pay the double time, to go ahead; "but", he added, "I won't pay any double time for moving derricks." Upon this understanding, Horn's men went to work. They finished moving the derrick about noon and were going away, when Mason said that he "was ready for the grillage beams," that they "might as well work on them as long as they were there, and that the pay would be all right," that "if Mr. Horn didn't want to pay them, he would pay," and that they "would be that much ahead of themselves Monday morning." The grillage beams thus referred to were steel "I" beams, twenty-eight feet long, twenty inches in height, weighing about 1,800 pounds, and were designed to be used as a part of the new foundation. One of these beams was lying on the main floor, at the time of this conversation, about forty feet from an opening in the floor large enough to permit the beam to be lowered through it to the basement. Without reporting this second conversation to Horn, and without Horn's knowledge, Timmons and his men proceeded to move the beam to a position near the opening in the floor, so that it could be lowered from that point into the basement. This was done by placing pieces of iron pipe under one

flange of the beam to serve as rollers, and the beam was then pushed along the floor towards the opening. As the beam thus moved near the opening in the floor, it turned over and fell through the opening upon Mc-Namara.    Suit was brought by the administrator against Horn, Bushnell and Mason. At the close of the plaintiff's evidence, a motion was made by each defendant for a peremptory instruction in his favor. These motions were denied. The same motions were renewed at the close of all the evidence; whereupon, the court directed the jury to return a verdict of not guilty as to the defendants Bushnell and Mason, but denied the motion as to Horn. The jury found Horn guilty and assessed the damages at six thousand dollars.

It is urged by counsel for the defendant that at the time of the accident Timmons and his men were not the servants of Horn, but were the servants of Bushnell and Mason, upon the principle announced in *Consolidated Fireworks Co. v. Koehl,* 190 Ill. 145, at page 149, towit: "It is well settled that one who is the general servant of another may be lent or hired by his master to another for some special service, so as to become, as to that service, the servant of such third party." But in the same case it is further said: "The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired.    *    *    * 'He is the master who has the choice, control and direction of the servants. The master remains liable to strangers for the negligence of his servants, unless he abandons their control to the hirer.' " In this case, the evidence shows, without contradiction, that the work which Horn's men were doing at the time of the accident was work which was included in Horn's subcontract. It is not claimed that there is any evidence tending to prove that Bushnell or Mason had any power to control or direct the manner in which Horn's men should do their work, except to see that the work

done complied with the contract. In other words, it is not claimed in this court that Horn did not occupy the position of an independent contractor as to the work included in his contract. The claim is that the men who handled the steel beam were not in Horn's employ at the time of the accident, because all the work they did after they had finished moving the derrick was being done on Sunday at the request of Mason without Horn's knowledge, consent or authority, and contrary to his express instructions not to work on that day. It appears from the evidence, however, without contradiction or explanation on the part of Horn, that although Horn did not know, prior to the accident, that his men continued at work, at Mason's request, after they had finished moving the derrick, still, after he had been fully informed of that fact and its consequences, he presented a bill to Bushnell and Mason for the amount due under the arrangement between the men and Mason, for the "overtime," or Sunday work, of the men, including the time when the accident occurred, that he collected the amount of the bill, and that he paid the men double time for all the time they worked that day. These facts being undisputed, they present, in our opinion, a clear case of ratification by Horn of the acts of his men in doing *his* work on Sunday. The request and agreement of Mason, as thus ratified and approved by Horn, made no change in the contract relations previously existing between them, except to increase the contract price by the amount required to pay for the overtime for Sunday work by Horn's men. Horn did not thereby "abandon the control" of his men to Mason. The men thereby did not become any more subject to the directions and control of Mason than before. They continued liable, as before, to the direction and control of Horn, as an independent contractor. As Horn approved the agreement which his men in his absence made with Mason, the legal effect of that agreement was to continue their employment as Horn's servants

during the overtime as fully as if he had himself directed them to work at that time.

It is contended that the trial court erred in refusing to give several instructions requested by the defendant. These instructions, if given, would have told the jury that if they believed from the evidence that the work which was being done at the time of the accident was being done "without the knowledge, consent or authority of the defendant" or "against his orders and directions," or that the men were at the time "under the sole direction and control of Mason," then they should find the defendant not guilty. For the reasons already stated, we think there was no error in refusing these instructions. All of them omit all reference to the uncontradicted fact that Horn knowingly accepted the benefit of the agreement between his men and Mason. If they had been given without qualification, they would have been very misleading. Moreover, in view of the fact that the evidence concerning the questions of authority and control was undisputed and uncontradicted, we think the court was justified in refusing the instructions upon the ground that the men were the servants of Horn as a conclusion of law from undisputed facts.

It is next insisted that the court erred in giving the peremptory instruction to find Bushnell and Mason not guilty at the close of all the evidence and refusing a like motion offered by the defendant Horn. The case of *Consolidated Fireworks Co. v. Koehl, supra,* is cited in support of this contention. It appears from the opinion in that case that there was a sharp conflict in the evidence in that case regarding the terms and conditions of the contract of employment, and in view of that fact, the Court said: "It was therefore a question of fact for the jury to determine, under proper instructions of the court, what the terms of said contract were, and not a question of law for the determination of the court." In this case, there is no conflict whatever in the evidence as to the terms and con-

ditions under which the men were working at the time of the accident. Conceding, therefore, that the action of the trial court in giving the peremptory instructions to find Bushnell and Mason not guilty and in allowing the case to go to the jury as to Horn, amounted in effect to holding, as a matter of law, that Horn's men were not Bushnell and Mason's servants, but were the servants of Horn at the time of the accident, we think there was no error in so holding under the facts shown in this case. Nor was it error for the court to so hold at the time the instructions were offered. Where several persons are jointly sued in an action of tort it has been repeatedly held that it is not error to permit the plaintiff, at the close of all the evidence, to dismiss his suit as to one or more of the defendants, and proceed as to the remaining defendant or defendants (*Lasher v. Littell*, 202 Ill. 551; *Linquist v. Hodges*, 248 Ill. 491); and upon the same principle, we think it is not reversible error for the court to instruct the jury to find one or more of the defendants not guilty at the close of all the evidence, if it appears at that time that there is no evidence in the record tending to prove the material averments of the declaration as to such defendant or defendants. This is especially true in this case, since the court gave an instruction stating that the fact that the court had directed a verdict of not guilty as to Bushnell and Mason "is not to be taken as any indication on the part of the court as to whether the defendant Horn is or is not guilty."

For the reasons indicated, the judgment of the Superior Court will be affirmed.

*Affirmed.*